# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**October 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **C.K.-1, J.K., K.K.-1, K.K.-2, and W.K.**

**No. 18-0415** (McDowell County 17-JA-134, 135, 136, 137, and 138)

## MEMORANDUM DECISION

Petitioner Father C.K.-2, by counsel Brittany R. Puckett, appeals the Circuit Court of McDowell County's April 4, 2018, order terminating his parental rights to C.K.-1, J.K., K.K.-1, K.K.-2, and W.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joshua J. Miller, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent and terminating his parental rights without first granting him an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 28, 2017, the DHHR filed an abuse and neglect petition against petitioner following a referral made by the West Virginia State Police. The DHHR alleged that the police responded to a possible suicide at petitioner's home. Trooper J.A. Tupper reported that the children's mother was shot in the head at the home and that petitioner claimed it was an accidental shooting. Trooper Tupper also reported that the home was "filthy as there were dirty diapers cluttered in the residence . . . and he reported that he could hear rodents in the walls." Lastly, he reported that there was marijuana and methamphetamine in the home. The children were not in the home when their mother was shot, but there was evidence that they lived in the home.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because a child and the father share the same initials and two of the children share the same initials, we will refer to them as C.K.-1 and C.K.-2, and K.K.-1 and K.K.-2, respectively, throughout this memorandum decision.

1

On January 22, 2018, after reviewing photographs of the crime scene, the DHHR filed an amended petition alleging that the home was in a deplorable condition, illicit substances and drug paraphernalia were within reach of the children, and the home was heated only by the kitchen stove and a small space heater. Petitioner waived his preliminary hearing.

On February 15, 2018, the circuit court held an adjudicatory hearing. Petitioner moved for a psychological evaluation and substance abuse assessment, which the circuit court denied. Trooper Tupper testified that he arrived to the crime scene and found the mother dead in the living room. He found petitioner covered in blood and "acting very erratic." Petitioner was the only other person in the home when the mother was shot; the children were not present. Trooper Tupper also testified that he observed methamphetamine, marijuana, and several needles in the home. He went on to explain that there was a mattress in the living room, which appeared to be used as a bedroom. He said that there were other rooms in the home, but they contained no beds and were full of trash. One room had a crib in it, but the crib was filled with dirty diapers. He further testified that there was drug paraphernalia within easy access of the children.

Next, a Child Protective Services ("CPS") worker testified that she was unable to visit the home because it was rented to different tenants soon after the shooting incident, but that she reviewed photographs from the crime scene. She observed the deplorable condition of the house. Specifically, she noted that she saw what appeared to be drug paraphernalia, marijuana, methamphetamine, Suboxone, and needles in the home. Petitioner did not present any evidence. In its order, the circuit court found clear and convincing evidence that petitioner "committed murder, or at least voluntary manslaughter" of the mother; "there were needles and drug paraphernalia located in the home;" and "the house was in a deplorable condition." Petitioner was adjudicated as an abusing parent pursuant to West Virginia Code § 49-1-201.

On March 29, 2018, the circuit court held a dispositional hearing during in which the DHHR and the guardian moved to terminate petitioner's parental rights. Petitioner moved to voluntarily relinquish his parental rights, which the circuit court denied. Again, petitioner did not present any evidence during the hearing. The circuit court found that termination of petitioner's parental rights was the least-restrictive dispositional alternative and that placement in petitioner's home was contrary to the children's welfare. Ultimately, the circuit court terminated petitioner's parental rights in its April 4, 2018, order. It is from this order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether

---

[2]The children's mother is deceased. According to respondents, C.K.-1 and J.K. are placed together in a foster home and K.K.-1, K.K.-2, and W.K. are placed in together in a separate foster home. The permanency plan for the children is for one of the current foster families to adopt all the children.

such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent because the criminal accusations against him involving the mother's death were "mere allegations and he has not been indicted on those charges, let alone found guilty, criminally." We do not find this argument persuasive.

We have held that

"W.Va. Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W.Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citing *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *In re F.S.*, 233 W.Va. at 546, 759 S.E.2d at 777 (quoting *Cramer v. W.Va. Dep't of Highways*, 180 W.Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)).

Pursuant to West Virginia Code § 49-1-201, a neglected child is one

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent. . . .

After reviewing the record, we find that sufficient evidence existed upon which to adjudicate petitioner as an abusing parent, even without considering his role in the death of the

mother. The DHHR presented detailed evidence regarding the deplorable conditions of the home, including the presence of multiple illegal substances, drug paraphernalia, and needles, all accessible to the children. Further, the bedrooms contained no beds and the living room appeared to be used as a bedroom. One room had a crib, but the crib was filled with dirty diapers. All of the other rooms were filled with trash. Also, the only sources of heat for the home came from the kitchen stove and a small space heater. As such, we find that the record demonstrates that the children were clearly, at a minimum, neglected and that the circuit court properly adjudicated petitioner as an abusing parent based upon clear and convincing evidence.

Petitioner next argues that the circuit court erred in terminating his parental rights without first granting him an improvement period. Specifically, petitioner argues that "he was never given the opportunity to participate in an improvement period to correct the conditions that resulted in the termination of his parental rights." However, we find that petitioner's argument is without merit. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements.").

Pursuant to West Virginia Code § 49-4-610, the circuit court may grant a parent an improvement period if the parent "moves in writing for the improvement period" and "demonstrates, by clear and convincing evidence, that the [the parent] is likely to fully participate in the improvement period[.]" Here, there is no evidence in the record that petitioner ever moved for an improvement period. Further, petitioner did not present any evidence below to demonstrate by clear and convincing evidence that he would be likely to participate in an improvement period. Therefore, petitioner failed to meet the requisite burden to receive an improvement period. We have also held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W.Va. at 217, 599 S.E.2d at 640). During the proceedings below and on appeal, petitioner failed to acknowledge the deplorable conditions of the home, the illicit substances found in the home, or how his actions constituted neglect of the children. Therefore, an improvement period would have been futile.

Moreover, we find no error in the circuit court's termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon finding that there is no reasonable likelihood the conditions of neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation in which there is no reasonable

4

likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

The record demonstrates that there was sufficient evidence upon which to terminate petitioner's parental rights. As discussed above, evidence was presented that the home was in a deplorable condition and that the rooms were filled with trash, including a crib filled with dirty diapers. The home was heated only by the kitchen stove and a small space heater. Further, the children did not have appropriate bedrooms, and there were illicit substances and drug paraphernalia within their reach. Due to the condition of the home and the neglect suffered by the children, the termination of petitioner's parental rights was necessary for the children's welfare. Additionally, because petitioner refused to acknowledge the issues of neglect in the instant proceedings, it is clear that there was no reasonable likelihood that he could correct those issues. While petitioner argues that he should have been granted an improvement period prior to the termination of his parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c) ] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Therefore, we find that the termination of petitioner's parental rights was proper.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 4, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  October 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating

5